**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MATTHEW THOMPSON,** | * | |
| | * | |
| *Plaintiff,* | | |
| v. | | |
| | * | **Civil Case No: 1:22-cv-02379-JMC** |
| **ALLSTATE PROPERTY AND** | | |
| **CASUALTY INSURANCE CO.,** | * | |
| | | |
| *Defendant.* | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Matthew Thompson, filed the present lawsuit on September 19, 2022, against Defendant, Allstate Property and Casualty Insurance Company, alleging breach of contract (Counts I–V), negligence (Counts VI–XIX), fraud (Counts XX–XXII), failure to settle claims in good faith (Count XXIII), and breach of the duty of good faith and fair dealing (Count XXIV). (ECF No. 1). Plaintiff subsequently filed an Amended Complaint on October 6, 2022 (ECF No. 5), and his now-operative Second Amended Complaint on November 2, 2022. (ECF No. 9). Plaintiff's Second Amended Complaint narrows Plaintiff's claims to breach of contract (Count I) and failure to settle claims in good faith (Count II). (ECF No. 9). Before the Court is Plaintiff's Motion to Compel Appraisal and Stay Litigation Pending Appraisal. (ECF No. 47). The motion is fully briefed (ECF Nos. 49, 50) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023); (ECF No. 48). For the reasons explained below, Plaintiff's motion will be granted.

I.     **BACKGROUND**

According to Plaintiff's Second Amended Complaint, Plaintiff resided in a Middletown, Maryland, residence at all times relevant to this lawsuit.  (ECF No. 9 at 2).[1]  Plaintiff maintained homeowners insurance policy 000928522414 (the "Policy") issued by Defendant.  *Id.*  The Policy includes coverage for Plaintiff's residence "including improvements thereon and the contents therein" as well as "an indemnification policy, wherein Defendant promises to return Plaintiff's Property to its pre-loss condition, within policy limits."  *Id.*  It also includes coverage under certain circumstances for physical losses to the property resulting from windstorms.  (ECF No. 53-1 at 24).

A storm allegedly caused damage to the roof of Plaintiff's residence on October 30, 2020.  *Id.*  Plaintiff filed an insurance claim under the Policy shortly thereafter and hired a public adjusting firm, Adjust It Once, LLC ("AIO") "to evaluate the claim and secure proper indemnification from Defendant."  (ECF No. 9 at 2).  AIO's subsequent inspection proposed that Plaintiff's roof needed to be replaced because of the October 30, 2020, storm instead of requiring only repair.  *Id.*  "On March 23, 2021, [AIO] submitted a letter of representation to Defendant.  [AIO] made a subsequent demand for supporting documentation that would justify Defendant's position for denial of coverage and limitation of liability on the Loss," implying that Defendant disclaimed coverage for Plaintiff's total roof replacement.  *Id.*

According to Plaintiff, "Defendant and its representatives conducted several inspections utilizing 'adjusters' prior to [AIO's] involvement," through which "All of Defendant's representatives identified wind damage to the porch roofs and the main dwelling roof."  *Id.*

---

[1] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

"Additionally, these representatives identified the main roofing structure as Transite type shingles composed of Asbestos Containing Materials (ACM) which was identified on the estimate by labeling the roof as such." *Id.* at 2–3. Defendant's representatives supposedly "began significantly delaying their adjusting of Plaintiff's claim and denied Plaintiff's sworn proof of loss" after AIO became involved. *Id.* at 3.

Defendant then rejected AIO's estimate regarding the scope of work on Plaintiff's claim and allegedly denied requests for full indemnification on Plaintiff's claim. *Id.* Plaintiff avers that:

> [AIO] has repeatedly requested that Defendant present an insurance code, policy exclusion, construction techniques documents, or other supporting information that would support Defendant's position in this claim that would limit or remove Defendant's liability to pay this claim according to the sworn proof of loss. Defendant has reaffirmed their position, and taken a 'because we say so' stance with no firm justification for decisions with regard to Plaintiff's claim.

*Id.* Plaintiff submits that Defendant has issued inconsistent decisions regarding Plaintiff's claim, including varying estimates of the scope of work regarding Plaintiff's claim and varying conclusions regarding covered losses. *Id.*

After Defendant supposedly articulated its intention to pay for some of Plaintiff's claim, Defendant allegedly failed to follow through and even canceled a check it provided to Plaintiff regarding his claim without informing Plaintiff as such, "caus[ing] Plaintiff embarrassment and lost reputation with Plaintiff's local financial institution" when that check bounced. *Id.* at 4. Further, Plaintiff alleges that "Defendant issued four separate payments to Plaintiff without naming Plaintiff's lienholder as a co-payee. Defendant then proceeded to cancel four checks submitted to [AIO] without informing [AIO] of Defendant's intentions, an action that caused significant confusion and hindrance of the adjusting process." *Id.* Plaintiff posits that he continues to incur damages because of Defendant's actions and that his "claim remains severely underpaid." *Id.*

3

## II.     ANALYSIS

"Our primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself." *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000).  "We look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage." *Id.* (citing *Chantel Assoc. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142 (1995)).  Pertinent to the present motion, the Policy provides that:

> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal.  Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identify within 20 days after the demand is received.  The appraisers will select a competent and impartial umpire.  If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.
>
> The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item.  If the appraisers submit a written report of an agreement to you and to us the amount agreed upon shall be the amount of loss.  If they cannot agree, they will submit their differences to the umpire.  A written award agreed upon by any two will determine the amount of loss.

(ECF No. 53-1 at 35).

"In Maryland, this Court has long recognized that, notwithstanding the distinctions between an appraisal under an insurance policy appraisal clause and arbitration, appraisal is analogous to arbitration.  Consequently, this Court has applied arbitration law to appraisal clauses in insurance polices." *Brethren Mut. Ins. Co. v. Filsinger*, 54 Md. App. 357, 363 (1983); *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 293 Md. 409, 422 (1982).  A brief discussion of *Aetna* is useful.  In *Aetna*, Maryland's highest court considered "whether, under [] an appraisal clause, an insured can compel an insurer to submit to appraisal." 293 Md. at 410.  The insurance contract in *Aetna* read:

> In case the insured and this Company shall fail to agree as to the actual cash value of the amount of loss, then, on the written demand of either, each shall select a

4

competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

*Id.* at 411. Following disagreement regarding the amount of loss to the subject property, "the insured, invoking the appraisal clause in the insurance policy, demanded appointment of appraisers." *Id.* at 412. The insurance company defendant in *Aetna* "concluded that the appraisal clause was inapplicable because the disagreement between the two parties involved a question of coverage and not amount of loss, and refused to submit to appraisal," similar to Defendant's stance in this case. *Id.* at 413; *see also* (ECF No. 49-1 at 4–5) ("Allstate is likewise not required to give up its right to challenge coverage for damages and/or repairs clearly excluded by the terms of the subject Policy by requiring it to participate in the appraisal process . . . The majority of courts that have ruled on this issue agree that a coverage dispute is not the proper subject of appraisal."). "After a hearing, the trial court declared that the insurer was required to submit to appraisal and to pay the insured cash value of the loss that the appraisal determined to be due" and accordingly "entered a judgment in favor of the insured" after the insured "filed a cross-petition for declaratory relief seeking an affirmative declaration that the insurer must comply with the appraisal clause and pay the amount of money that the appraisal determined to be due." *Aetna*, 293 Md. at 413–14.

After noting that different jurisdictions came to different conclusions on this issue, the appellate court was "persuaded that under the appraisal clause here, the appropriate principle to be applied is that ordinarily an insured may compel an insurer to submit to appraisal. The plain

language of the appraisal clause, the need to preserve the insured's bargained for benefit, and the legislative policy in favor of enforcement of executory agreements to arbitrate, dictate this result."

*Id.* at 420.  Turning to the language of the contract itself, the court then explained:

> Here, the appraisal clause expressly provides that in the event of a failure to agree on the amount of loss, on the written demand of either the insured or the insurer, each shall select an appraiser.  This language is plain and unambiguous.  It mandates that both the insured and the insurer submit to appraisal upon the demand of either, thereby assuring that the insured as well as the insurer has a contractual right to a prompt and inexpensive determination of the amount of loss.  That contractual right, for which the insured bargained and paid premiums, can be preserved only if the insured is enabled to compel the insurer to submit to appraisal.

*Id.* at 421.  The court made this decision with reference to the Maryland Uniform Arbitration Act ("MUAA"), which, among other things, "states that an executory agreement to submit to arbitration is enforceable"; "expressly provides that a court has jurisdiction to enforce an agreement to submit to arbitration"; "specifies that if a party refuses to arbitrate, a court may compel that party to submit to arbitration;" and "explicitly authorizes the court to appoint arbitrators if the agreed appointment method fails."  *Id.* at 421–22 (citing Md. Code Ann., Cts. & Jud. Proc. §§ 3-206(a), 3-202, 3-207(a), (c), 3-211).  The court then noted, as mentioned above, that it "has applied arbitration law to appraisal clauses in insurance policies" before concluding that an insured compelling an insurer "to submit to appraisal when the insurer refuses to comply with a mandatory appraisal clause is consonant with Maryland's legislative policy favoring enforcement of executory agreements to arbitrate" and affirming the trial court's decision to compel appraisal.  *Id.* at 422, 424.

The MUAA has since been amended.  It now states that "Except as provided in paragraph (2) of this subsection, any provision in an insurance contract with a consumer that requires arbitration is void and unenforceable."  Md. Code Ann., Cts. & Jud. Proc. § 3-206.1(b)(1).  However, paragraph (2) of that subsection then clarifies that "This subsection does *not* apply to a

provision that establishes an appraisal process to determine the value of property." *Id.* § 3-206.1(b)(2) (emphasis added). So although Defendant argues that "an insurance contract with a consumer cannot force the insured to give up his/her right to a jury or bench trial to resolve an alleged breach of the insurance contract," the MUAA unambiguously provides that a provision requiring appraisal such as that contained in the Policy is permissible. (ECF No. 49-1 at 4).

Defendant separately brings up the issue of waiver. Specifically, Defendant argues that, assuming *arguendo* that the appraisal clause is enforceable given the facts presented, Plaintiff has waived his right to invoke the appraisal clause by filing two separate administrative complaints with the Maryland Insurance Administration and by filing the instant lawsuit. (ECF No. 49-1 at 6–7). "The doctrine of waiver may work to deprive an insurer [or insured] of a right it would otherwise possess." *Creveling v. Gov't Emps. Ins. Co.*, 376 Md. 72, 96 (2003) (citing *GEICO v. Medical Servs.*, 322 Md. 645, 650 (1991)). "Waiver, in general, is 'the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.'" *Id.* (quoting *Food Fair v. Blumberg*, 234 Md. 521, 531 (1964)). "In insurance law, waiver requires 'an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish.'" *Id.* (quoting *GEICO*, 322 Md. at 650–51). Whether a party has waived its rights under an insurance contract "is normally a question for the trier of fact, for the determination of its existence *vel non* turns on the intent of the party ostensibly waiving the right, a state of mind which is to be derived from the facts and circumstances surrounding the purported relinquishment." *St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 145 (1981).

7

Analyzing this issue akin to arbitration clauses, "A party may waive its right to insist on arbitration if the party so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration," or in this case appraisal, "would prejudice the party opposing the stay." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quotation omitted). The party opposing arbitration or appraisal "bears the heavy burden of proving waiver." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). And "even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, '[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*.'" *MicroStrategy*, 268 F.3d at 249 (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987)) (emphasis added in *MicroStategy*). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id.*

Here, Defendant's argument hinges on the fact that Plaintiff has already commenced administrative proceedings and the present lawsuit in connection with his claims, as well as Plaintiff's alleged delay in enforcing the appraisal clause. (ECF No. 49-1 at 7–8). But as *MicroStrategy* and its progeny explain, such filing of pleadings and delay, without a further showing of actual prejudice, is insufficient to deny an insured their right to invoke an appraisal provision in contexts like this. Without a stronger showing of actual prejudice by Defendant, and

in light of Defendant's concession that "there are no Maryland cases on this issue" specifically, the Court declines to conclude at this stage that Plaintiff waived his right to compel appraisal.

The Court then returns to the merits of Plaintiff's compulsion request. Although the above law indicates that invoking an appraisal clause is proper under certain circumstances, Defendant contests that such circumstances apply here. Specifically, Defendant argues that the appraisal clause at most allows for an arbitrator to opine on the "amount of loss," but that Plaintiff improperly attempts to have an arbitrator opine on coverage issues in this case. (ECF No. 49-1 at 5). This Court has historically agreed with Defendant insofar as it has concluded that *coverage* determinations are best left to the Court rather than an appraiser, whereas the exact amount of covered damages is well suited for an appraiser where both parties agree upon specific covered damages but disagree as to the exact value of those damages. *Wausau Ins. Co. v. Herbert Halperin Distribution Corp.*, 664 F. Supp. 987, 988–89 (D. Md. 1987).

In other words, this Court has noted that invoking the appraisal process is proper where both parties agree that there exists a covered loss under an insurance policy but disagree as to the precise value of that covered loss. Conversely, the appraisal process is improper where a party attempts to use it as a conduit for additional coverage beyond that which falls within the scope of the relevant insurance policy. Defendant highlights as much by providing ample persuasive authority for the proposition that "The majority of courts that have ruled on this issue agree that a coverage dispute is not the proper subject of appraisal." (ECF No. 49-1 at 5); *see, e.g.*, *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007); *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 152–53 (Tenn. Ct. App. 2001); *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 857 (W. Va. 1991); *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 204–05 (2d Cir. 2012); *HHC Assocs. v. Assurance Co. of Am.*, 256 F. Supp. 2d 505, 510–11 (E.D. Va.

2003); *Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, No. 02 CIV. 6741 (HB), 2003 WL 1744288, at

*4 (S.D.N.Y. Mar. 31, 2003); *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469–70 (Mich.

App., 1991).

Here, it is not entirely clear whether Plaintiff's requested appraisal is limited solely to

determining the value of damages which both parties have already agreed occurred because of a

covered peril under the Policy.  For instance, Plaintiff's Second Amended Complaint claims that

"All of Defendant's representatives identified wind damage to the porch roofs and the main

dwelling roof" but subsequently provided varying and contradictory estimates regarding the

"actual value of Plaintiff's claim." (ECF No. 9 at 2–3).  Such allegations, if true, would support

the appointment of an appraiser to determine the exact value of damages to Plaintiff's residence

that fall within the Policy's scope.  However, Plaintiff does not clearly identify in the present

motion the exact damage(s) to his residence for which he seeks an appraisal or attempt to clearly

distinguish covered damages for which he seeks appraisal from additional losses for which he

contends he is entitled to coverage in the face of Defendant's denials regarding same.  Plaintiff

does submit, though, that:

> On or about October 30, 2020, while the Policy was in full force and effect,
> Plaintiff's Property sustained damage to the roof and exterior as a result of a
> covered peril — Allstate does not dispute this.  Allstate agreed to pay for damage
> to the Property, however, under-scoped the damage and failed to issue adequate
> payment to Plaintiff for the necessary repairs.  Indisputably, Defendant's own initial
> valuation of the damage was incorrect as evidenced by additional inspections being
> made and supplemental payments being issued.  The differing of opinions as to the
> value of covered damage is precisely the type of dispute that appraisal aims to
> resolve.  As to the areas of damage for which Allstate claims to have a coverage
> defense, obtaining a valuation of said damage through appraisal would in turn
> narrow the triable issues in this matter.

(ECF No. 50 at 3).  On the other hand, Defendant does not argue in its opposition that it has entirely

disavowed coverage for any purported losses to Plaintiff's residence nor does it clearly indicate

that any particular losses are excluded from the Policy's coverage and therefore an appraiser's valuation of those losses would be inapposite.

The Court will reconcile the above by compelling appraisal while preserving Defendant's right to contest whether certain damages set forth by that appraisal fall within the Policy's gambit. The question of whether any particular damage(s) to Plaintiff's residence is covered under the Policy exceeds the scope of the appraisal clause given the clause's plain language and the above case law. But Plaintiff has presented sufficient information supporting that the parties contest the value of certain damage(s) that Defendant has identified coverage for under the Policy resulting from a covered peril. Thus, the Court will grant Plaintiff's motion and compel the parties to engage in the appraisal process to better determine the precise value of loss to Plaintiff's residence resulting from a covered peril. However, the Court will also require the appraisers to itemize their damage reports such that Defendant will be able to contest whether any particular damages are excluded from the Policy's coverage. This solution recognizes Plaintiff's contractual right to invoke appraisal under the Policy, preserves Defendant's ability to contest the scope of covered losses under the Policy following that appraisal, and accords with the Court's general sentiment of encouraging alternate dispute resolution methods for the sake of efficiency and judicial economy. This solution is also one that federal courts have previously employed. *See, e.g.*, *6700 Arrowhead Owners Ass'n v. State Farm Fire & Cas. Co.*, No. CV-12-1677-PHX-DGC, 2012 WL 5868969, at *2–3 (D. Ariz. Nov. 19, 2012).

Further, this ruling should not be read as foreclosing Defendant's ability to contest other aspects of Plaintiff's claims at the summary judgment stage, such as whether Plaintiff properly designated expert witnesses under Rule 26 or whether Plaintiff failed to protect the property from further damage, thereby exacerbating the amount of loss attributable to a covered peril. *See* (ECF

No. 49-1 at 3).  And in light of the fact that Plaintiff's motion was still pending as of the date which dispositive motions were due in this case, the Court will toll the dispositive motions deadline indefinitely while the parties engage in appraisal, at which time Defendant (or Plaintiff) may fully assert any such arguments that it believes entitle it to summery judgment or other relief.  (ECF No. 45).    Finally, Defendant has not set forth a proposed appraiser or appraisal umpire in the event that the Court rejected its arguments.  The parties shall therefore confer and indicate to the Court within fourteen (14) days from the date of this Memorandum Opinion and Order the "competent and impartial appraiser[s]" that they have chosen and whether those appraisers have "select[ed] a competent and impartial umpire" pursuant to the Policy's appraisal clause.  (ECF No. 53-1 at 35). The Court will then issue an updated Order directing the parties to engage in the appraisal process with those appraisals and that umpire.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Appraisal and Stay Litigation Pending Appraisal (ECF No. 47) is **GRANTED** with the caveats expressed above.  This case will be stayed indefinitely pending the results of the appraisal, and the parties shall abide by the following directives:

1. The parties shall confer and jointly indicate to the Court within fourteen (14) days from the date of this Memorandum the competent and impartial appraisers they will utilize as well as whether the parties/appraisers have agreed upon a competent and impartial appraisal umpire; and

2. The parties shall confer and jointly submit to the Court within fourteen (14) days following the appraisal a proposed briefing schedule for dispositive motion deadlines.

This Order will be supplemented via further docket entries following the parties' compliance with the above.


Date: June 25, 2024                                          _____/s/_____ __
                                                            J. Mark Coulson
                                                            United States Magistrate Judge